# THE STATE OF NEW MEXICO *v.* THE STATE OF COLORADO.

## IN EQUITY.

No. 12 Original. Argued December 2, 3, 1924.—Decided January 26, 1925.

1. A line surveyed and marked in 1868 as the location of the parallel designated as the common boundary of the Territories, and later the States, of Colorado and New Mexico, was adopted and recognized by the United States as the true location and boundary, both during the existence of the two Territories and thereafter while New Mexico remained a Territory and Colorado was a State; it was likewise accepted and relied on by the State of Colorado from her admission in 1876, and by the State of New Mexico from her admission, in 1912, until she brought this suit against Colorado in 1919, wherein she claimed that another survey and location, made in 1903 under an appropriation from Congress, and which had been accepted by the General Land Office from 1904 to 1908, and approved in 1908 by a joint resolution of Congress which was vetoed by the President, should be established as the true location of the boundary.

*Held:* (*a*) That New Mexico, upon her admission as a State, was bound by the previous recognition and adoption of the earlier location by the United States, her predecessor, and could not be heard to disavow the boundary thus recognized. P. 41.

(*b*) The effect of this recognition of the earlier location by the United States was not impaired by the temporary recognition of the later one by the General Land Office. *Id.*

(*c*) After Colorado's admission as a State, her right to rely upon the boundary previously established could not be impaired by any subsequent action of the United States. *Id.*

(*d*) New Mexico was bound also by her own recognition and adoption of the earlier line upon and after her admission to statehood. *Id.*

2. The boundary between the States of Colorado and New Mexico is the line of the 37th parallel as surveyed and marked by Darling from the Macomb monument westwardly to the 109th Meridian, and as surveyed and marked by Major and Preston from the said Macomb monument eastwardly to the Preston monument on the 103rd or Cimarron Meridian. P. 39.

THIS was an original suit brought in this Court by the State of New Mexico against the State of Colorado to settle a controversy over their common boundary. New Mexico's bill was dismissed and a decree was directed, under Colorado's cross-bill, for a resurvey and remarking of the line found by the Court to be the true one, in accordance with Colorado's contention.

*Mr. Frank W. Clancy,* for complainant.

First, it is clear that the later, or Carpenter, survey is as good as can be made.

Second, the earlier, Darling, survey is inaccurate, defective, and in part a work of pure fiction.

Third, the General Land Office must have been thoroughly convinced of the utterly worthless character of the Darling survey, when it directed the making of a new and independent survey of the 37th parallel with an accompanying destruction, as far as possible, of all evidence on the earth's surface of the Darling line.

Fourth, Congress presumably took the same view when it authorized that new survey, and, later, passed a resolution adopting the Carpenter line.

Fifth, New Mexico has not recognized the Darling line as a boundary. It could not acquiesce in such a matter until it became a State, January 6, 1912; and this suit was brought with reasonable diligence thereafter.

Sixth, the United States while recognizing the Darling line for years, only because nobody questioned it, finally repudiated it and tried to destroy it. The recognition was by no means continuous. *Missouri* v. *Iowa,* 7 How. 660, differs widely on the facts and is inapplicable.

Seventh, even the State of Colorado, through its legislature, in 1901, shows a lack of certainty as to the Darling line which it now claims to have recognized ever since 1868.

*Messrs. Oliver Dean,* Assistant Attorney General of Colorado: *W. C. Williams,* Attorney General, and *Delph*

*E. Carpenter,* Special Counsel, with whom *Mr. Charles Roach,* Deputy Attorney General, was on the brief, for defendant.

I. The Darling-Major line was established by the United States when both Colorado and New Mexico were Territories and both States are bound by that boundary line. *Missouri* v. *Iowa,* 7 How. 660; *Missouri* v. *Kentucky,* 11 Wall. 395; *Indiana* v. *Kentucky,* 136 U. S. 479; *Alt* v. *Butz,* 81 N. J. L. 156; *Billingsley* v. *Bates,* 30 Ala. 376; *Climer* v. *Wallace,* 28 Mo. 556; *Mayor etc. of Liberty* v. *Burns,* 114 Mo. 426; *Granby Mining etc. Co.* v. *Davis,* 156 Mo. 422; *Arneson* v. *Spawn,* 2 S. Dak. 269; *Goodman* v. *Myrick,* 5 Ore. 65; *Jones* v. *Kimble,* 19 Wis. 429; *Washington Rock Co.* v. *Young,* 110 Am. St. R. 678.

II. The surveys of the Darling-Major line made in 1868 and 1874 are the senior surveys of the boundary line and must prevail over the junior survey made by Carpenter in 1902.

The Carpenter survey is not shown to have been made by proper authority. It was simply a new and independent survey, and does not purport to show the line as originally established.

Original survey of lands, upon the faith of which property rights have been based and acquired, controls over surveys subsequently made which injuriously affect such rights. *Washington Rock Co.* v. *Young,* 29 Utah 108; *Clement* v. *Parker,* 125 U. S. 309.

A subsequent survey cannot alter or control an original survey. When this can be traced or proved it must govern. *Diehl* v. *Zanger,* 39 Mich. 601; *City of Racine* v. *Emerson,* 85 Wis. 80.

III. The Darling-Major line is the boundary between these States by reason of the recognition and acceptance thereof by the Territories and later by the States of Colorado and New Mexico and by the United States from the time of the survey thereof until the time this suit was filed.

New Mexico is not only bound by the acts of the United States in surveying, establishing, monumenting and there-after recognizing and adopting the Darling-Major line as the true boundary, but is also estopped by the doctrines of long possession, prescription, laches and acquiescence from now asserting a different boundary. *Rhode Island* v. *Massachusetts,* 4 How. 591; *Indiana* v. *Kentucky,* 136 U. S. 479; *Virginia* v. *Tennessee,* 148 U. S. 503; *Louisiana* v. *Mississippi,* 202 U. S. 1; *Maryland* v. *West Virginia,* 217 U. S. 1.

IV. The Carpenter survey has no legal status as a boundary line because it was made without the consent of the State of Colorado, never received the approval of the State, was rejected by Congress and has always been disregarded by every department of the Government of the United States.

MR. JUSTICE SANFORD delivered the opinion of the Court.

This is a suit in equity, within the original jurisdiction of this Court, brought by the State of New Mexico against the State of Colorado, in 1919, to settle a controversy as to the location of their common boundary line. Under the Acts of Congress under which they were admitted into the Union and their respective Constitutions, this is the 37th parallel of north latitude between its intersections with the 103rd and 109th meridians of longitude west from Greenwich.[1]

The only dispute is as to the location of this line. Different surveys have been made. New Mexico alleges in its bill that the true line is that which was surveyed

---

[1] The 26th and 32nd meridians west from Washington. Colorado: Act of Mar. 3, 1875, c. 139, 18 Stat. 474; Constitution, Art. I. New Mexico: Act of June 20, 1910, c. 310, 36 Stat. 557; Constitution, Art. I, Sec. 2.

and marked by Howard B. Carpenter in 1903, and prays that this be decreed to be the boundary. Colorado, in an answer and cross bill, alleges that the true line is that which was surveyed and marked by Ehud N. Darling in 1868, and extended by John J. Major and Levi S. Preston in 1874 and 1900; and prays that this line be decreed to be the boundary, and that, in so far as necessary, it be restored and remarked.

The case has been heard on evidence taken by examiners, supplemented by a stipulation of the parties. The material facts are these: The Territory of New Mexico was established in 1850,[2] and the Territory of Colorado in 1861.[3] Under the Acts of Congress their common boundary was the 37th parallel, between the 103rd and 109th meridians.

In 1867 Congress made an appropriation for the "survey of the thirty-seventh parallel of north latitude, so far as it constitutes the northern boundary of the Territory of New Mexico." [4] The Commissioner of the General Land Office employed Ehud N. Darling, a surveyor and astronomer, to make this survey. He made the survey in 1868, and filed his field notes in the Land Office. In accordance with his instructions, he adopted as the northeast corner of New Mexico a stone monument that had been established by Capt. J. N. Macomb, an Army Engineer, in 1859, to mark the intersection of the 37th parallel with the 103rd meridian, and, taking this as his beginning point, surveyed and marked the line of the parallel, as determined by astronomical observations and calculations for latitude, westwardly to the 109th meridian, a distance of over 331 miles. As shown by the field notes he established on this line eleven "astronomical monuments," with "mile corners," usually marked

[2] 9 Stat. 447, c. 49.
[3] 12 Stat. 172, c. 59.
[4] 14 Stat. 457, 466, c. 167.

stones, at the end of each mile where the nature of the ground made this possible, otherwise locating the mile corners by triangulation. In 1869 the Commissioner of the General Land Office approved these field notes, and published an official " Map of the Boundary Line between Colorado & New Mexico on the 37th Parallel North Latitude," made in conformity to them.

Several years later the Commissioner of the General Land Office employed John J. Major, a surveyor and astronomer, to survey and mark the remaining portion of the southern boundary of the Territory of Colorado, extending along the 37th parallel to the 102nd meridian. Major made this survey in 1874, and marked the line of the parallel between the Macomb monument and that meridian. The field notes of this survey were filed in the Land Office and approved by the Commissioner.

In 1876 the State of Colorado was admitted into the Union, with the same southern boundary line as that of the Territory.[5]

Some years later the 103rd meridian was established on a line known as the " Cimarron Meridian," intersecting the 37th parallel a short distance east of the Macomb monument. Thereafter the United States Surveyor General employed Levi S. Preston, a deputy surveyor, to resurvey and retrace the north boundary of New Mexico between the Macomb monument and the Cimarron meridian. Preston made this survey in 1900, retracing and remarking this portion of the Major line, and established at the intersection of that line and the Cimarron meridian, about two miles east of the Macomb monument, a sandstone corner since known as the Preston monument. The field notes of this resurvey were filed in the office of the Surveyor General and approved by him.

[5] President's Proclamation, Aug. 1, 1876, 19 Stat. 664. See note 1, *supra.*

In 1901 the State of Colorado appointed a commissioner to resurvey and remark a portion of its southern boundary line as surveyed and established by Darling, on which one of his astronomical monuments had disappeared and a number of mile corners could not be found.[6] Both the Territory of New Mexico and the Interior Department were invited to join in this resurvey, but neither did so; and it was made by the Colorado commissioner alone.

In 1902 an examiner of surveys in the General Land Office, on an inspection of about sixty miles of Darling's original line, reported that but few of the corners then remained, and that the line was evidently erroneously established between identified monuments; and the Commissioner urged that the entire southern line of Colorado be resurveyed and reëstablished. Thereupon, on the recommendation of the Secretary of the Interior,[7] Congress made an appropriation for " the resurvey and reëstablishment, on the line of the thirty-seventh parallel of north latitude, of the boundary line between the State of Colorado and the Territories of New Mexico and Oklahoma" between the 102nd and 109th meridians.[8] The Commissioner of the General Land Office employed Howard B. Carpenter, a surveyor and astronomer, to make this resurvey. He was not directed to retrace the lines previously established, but to make an independent survey, and was specifically instructed to " obliterate " all evidences of the corners and monuments that had been set by Darling. Carpenter completed this resurvey in 1903, and filed his field notes in the Land Office in 1904. These were approved by the Commissioner. Carpenter sur-

---

[6] Colorado Laws, 1901, c. 37.

[7] 57th Cong., 1st Sess., H. R. Doc. No. 604.

[8] Act of July 1, 1902, 32 Stat. 552, 574, c. 1351. The 37th parallel was also the common boundary of Colorado and Oklahoma, between the 102nd and 103rd meridians.

veyed an entirely different line from the Darling and Major-Preston lines. His new line commenced on the 109th meridian, at some distance north of the Darling line, and ran for the greater portion of the boundary north of that line, although crossing it shortly before reaching the Macomb monument and running for the remainder of the distance somewhat to the south of the Darling and Major-Preston lines. Taken as a whole, its effect, if established as the boundary, would be to transfer a large strip of territory from Colorado to New Mexico, including the greater portions of one town and two villages, and five post offices. Carpenter established on his new line eight stone astronomical monuments, and mile corners, marked by iron posts, wherever it was practicable; and whenever he found one of Darling's mile corners or astronomical monuments, after noting its location, either destroyed it completely or obliterated the marks upon it.

After the Commissioner's approval of the Carpenter line the General Land Office ceased to recognize the Darling and Major-Preston line as the boundary between Colorado and New Mexico in so far as related to the public lands, as it had theretofore done, and for a time recognized the Carpenter line as the boundary.

In 1908 Congress passed a Joint Resolution accepting the line of the Carpenter survey " as the proper location of the thirty-seventh parallel and the true boundary line " between the States of Colorado and Oklahoma and the Territory of New Mexico.[9] This resolution was, however, vetoed by the President; and no further action was taken by Congress.

After this veto by the President the General Land Office abandoned its recognition of the Carpenter line, and thereafter continued to recognize the Darling and Major-Preston line as the boundary.

---

[9] 60th Cong., 2d Sess., Sen. Doc. No. 604.

In 1912 the State of New Mexico was admitted into the Union, with the same northern boundary line as that of the Territory.[10]

In 1917 about forty miles of Darling's original line included in the resurvey that had been made by the Colorado commissioner, were resurveyed and restored under the direction and with the approval of the Commissioner of the General Land Office.

In addition to the foregoing matters the stipulation of the parties recites:—" That, except as may otherwise be shown by the record in this case as now made, for more than thirty years the position of the Darling line, from the Macomb Monument to the . . . 109th meridian of longitude West from Greenwich, remained undisputed and the correctness of its technical execution unquestioned, and, as so established, the said Darling line has been recognized and acquiesced in by the United States, by the Territory and State of Colorado, by the Territory of New Mexico and by the State of New Mexico except as otherwise indicated by the bringing of this suit, and has been and is now recognized and accepted by the Land Department of the United States, in its surveys of the public domain, as the boundary line between Colorado and New Mexico from the Macomb Monument westward, except so far as may otherwise appear (if it does otherwise appear) by the record in this case; that from 1868 to the present time the Territory and later the State of Colorado . . . has claimed and exercised dominion and sovereignty, and now claims the same, over the territory down to the boundary as established by said Darling and no farther; that county lines have been formed, towns and settlements have grown up, school districts, election districts, voting precincts, and land districts and water districts have been created with reference to said

---

[10] President's Proclamation, Jan. 6, 1912, 37 Stat. 1723.  See note 1, *supra*.

line; public officers have been elected, property has been assessed and taxes levied and collected under the authority of the Territory and State of Colorado, and its courts of both civil and criminal jurisdiction have exercised jurisdiction in all places north of said Darling line and the Territory and State of New Mexico has exercised like jurisdiction in all places south of said line; that government postoffice[s] have been established as being in Colorado when north of said line and as in New Mexico when south of said line, and that public land surveys on both sides of said line have been closed thereon, lands have been disposed of, rights acquired and political boundaries in both Colorado and New Mexico have been fixed by reference to said line. That since 1874 the Major survey and marking of the 37th parallel of North latitude . . . westward to the Macomb Monument has been the recognized and accepted South boundary of Colorado between said points and since the acceptance of the Preston survey, retracement and remarking of said line, in the year 1901, said line as remarked and retraced by Preston between said Macomb Monument and the Preston Monument, at the intersection of said parallel with the Cimarron Meridian, has been and now is the recognized and accepted boundary between Colorado and New Mexico at all points between said Monuments."

There is some evidence, of a very general nature, as to the relative correctness of the location of the line of the 37th parallel as established by Darling, Major and Preston, and by Carpenter. It may well be that neither is entirely correct. We have no occasion, however, to determine this question, or to settle the precise location of the parallel line as an original matter, since, upon the uncontradicted facts, it is entirely clear that the line of the parallel as surveyed and marked by Darling westwardly from the Macomb mounment, and by Major and Preston from the Macomb monument to the Preston

monument, must be now taken as the established boundary between the two States.

There is no question as to the portion of this line between the Macomb monument and the Preston monument, since it is expressly agreed that since this line was surveyed by Major in 1874 and resurveyed by Preston in 1901 it " has been and now is the recognized and accepted boundary between Colorado and New Mexico at all points between said Monuments."

The remainder of the line as surveyed and marked by Darling from the Macomb monument to the 109th meridian, must likewise be held to be the recognized and established boundary.

From 1868, when Darling ran and marked the line of the 37th parallel, to 1919, when this suit was brought, a period of more than half a century, his line was recognized and acquiesced in, successively, as the boundary between the two Territories, between the State of Colorado and the Territory of New Mexico, and between the two States. In *Missouri* v. *Iowa*, 7 Howard 660, which involved the location of the boundary line between the two States running with " the Indian Boundary line," it was held that governments are bound by the practical line that has been established as their boundary, although not precisely a true one; and that as the United States before either of the States had been admitted into the Union and after Missouri had been admitted but while Iowa still remained a Territory, had recognized and adopted the line of a certain survey as the " Indian boundary line " and was committed to that line as the boundary of Missouri, Iowa when admitted was bound by the recognition and adoption of that line by the United States, her predecessor, and could not be heard to disavow it as the boundary. So here, the United States, from 1868 to 1876, while still owning the public domain and having paramount jurisdiction as to territorial boundaries, recognized

and adopted the Darling line as the true location of the parallel and the boundary between the two Territories, and thereafter, from 1876 to 1912, while retaining paramount jurisdiction as to New Mexico, recognized this line as the boundary between the State of Colorado and the Territory of New Mexico; and the State of New Mexico on being admitted into the Union was bound by the previous recognition and adoption of this line by the United States, her predecessor, and cannot be heard to disavow the boundary thus recognized. The effect of this recognition of the Darling line by the United States was not impaired by the temporary recognition of the Carpenter line by the General Land Office, from 1904 to 1908. The United States had resumed its recognition of the Darling line several years before New Mexico was admitted as a State. Further, after Colorado had been admitted into the Union in 1876 its right to rely upon the line previously established could not be impaired by any subsequent action on the part of the United States. Thus, after the Land Department had surveyed and disposed of public lands, the rights therein acquired are not affected by corrective surveys subsequently made by the Department. *United States* v. *Investment Co.*, 264 U. S. 206, 212, and cases there cited. And, independently of these matters, New Mexico is bound by its own recognition and adoption of the Darling line, from 1912 to the beginning of this suit, after its admission to statehood. *Missouri* v. *Iowa, supra,* p. 677.

It results that the bill of New Mexico, praying the establishment of the Carpenter line, must be dismissed; and that, under the cross bill of Colorado, the Darling and Major-Preston line must be decreed to be the boundary between the two States.

This boundary line should now be resurveyed and remarked by a commissioner or commissioners appointed by the court; such action to be subject to its approval.

*Missouri* v. *Iowa, supra,* p. 679; *Indiana* v. *Kentucky,* 136 U. S. 479, 519; *Oklahoma* v. *Texas,* 260 U. S. 606, 640.

The parties may submit within thirty days the form of a decree to carry these conclusions into effect.

*Bill dismissed and decree directed under cross-bill.*