## WHITE v. SALING et al.

No. 28617. March 21, 1939.

Rehearing Denied April 11, 1939.

Application for Leave to File Second Petition for Rehearing Denied May 2, 1939.

Gasper Edwards and John Morrison, for plaintiff in error.

I. L. Harris and Ted R. Elliott, for defendants in error.

CORN, J. The defendants in error, plaintiffs below, were the owners of the east half of lot 23 and all of lot 24 in block "B," Fairview addition to Oklahoma City, and the plaintiff in error, defendant below, owned lots 25 and 26 in said block. These particular lots are numbered from west to east on the plat and are 25 feet in width. Referring herein to the parties as they appeared in the original action, the plaintiffs had a frontage of 37½ feet and the defendant had 50 feet, according to the recorded plat of said addition.

The plaintiffs, desiring to erect permanent and costly improvements upon their ground, had an official survey made and the boundary lines of their property located and established according to the recorded plat. The line thus located and marked by

the surveyor between the adjoining properties involved, revealed an encroachment of about 30 inches by the defendant upon the premises of the plaintiffs by reason of a back yard fence separating the properties, which said fence the defendant contended was the boundary line between the properties, notwithstanding the location made by the surveyor. The defendant did not appeal from the proceedings of the surveyor establishing said boundary line, and the same became final and conclusive. The defendant's garage also encroached a few inches upon the plaintiffs' premises according to the official survey, and the defendant refused to yield up possession of the disputed ground to the plaintiffs, and plaintiffs brought an action in ejectment and to quiet title, and for damages for unlawful detention of the same. The cause was tried to the jury, and at the close of the evidence the court directed a verdict for the plaintiffs as to ejectment, but submitted to the jury the question of damages. The jury returned a directed verdict for the plaintiffs in ejectment, and as to the question of damages returned a verdict for plaintiffs in the nominal sum of $1. The court rendered judgment upon the verdict, and the defendant brought this appeal.

The defendant in her answer set up a claim of title to the strip of ground in dispute by adverse possession, and undertook to show by the evidence that the plaintiffs and their grantors in title had acquiesced in the boundary line as marked by the fence aforesaid, which had been maintained upon said location for more than 15 years preceding the filing of the action. The court held that the survey of the lots was conclusive and ruled out the evidence on the question of adverse possession.

A general statement of the facts as found by the court and of the law involved in this case is contained in the remarks of the court to the jury in instructing the verdict. The facts are typical of the ordinary controversy arising over the location of a boundary line, and especially where the boundaries are fixed by a government survey or a recorded plat. The law applicable in this jurisdiction to the given facts could hardly be stated in more simple and comprehensible language, and for that reason we are quoting the same, as follows:

"Under this state of the record the court has heretofore held and again holds that this survey conducted by the county surveyor is conclusive of the establishment of the boundary lines between these parties. Notice was given as provided by statute and a survey was conducted as indicated it would be in the notice, and the parties were privileged to be there at the time that survey was conducted, and see what was done by the surveyor.

"Now everybody must take cognizance of what the law prescribes. When the county surveyor, after giving such notice to do a surveying job, everybody knows that he must file that report and if there are any objections to that report, under the law they must be made in a certain manner and an appeal taken, if necessary to preserve their rights, as they see them, within a certain length of time. None of that was done in this case, and for that reason I held that this survey establishes the boundary line between these disputed lots. Both sides are bound by it. It so happens that that line established by Mr. Hill coincides exactly with the plat boundary line between these disputed lots.

"Now, Mr. White bought according to the plat and got lots 25 and 26, and the extension of lot 25 is the line established by the plat, and that line established by the plat coincides with the line established by Mr. Hill, which is conclusive in this case. So, therefore, if Miss White, the present owner of lots 25 and 26, extends beyond that prescribed limit of lot 25, she goes beyond her legal boundary.

"The evidence, of course, is conclusive here that the fence in question is beyond the west line limits of lot 25. In other words, the fence owned or put up by the Whites is some 20 to 30 inches west of lot 25 and over on lot 24 which belongs to the Salings. Now, the only claim they could have to that little strip of ground would be by reason of adverse notorious possession for a period of time of 15 years or more. That is known in law as the prescriptive right. You can hold a piece of property under claim or color of title, adversely and notoriously toward the world for 15 years or more, and you could not be dispossessed.

"Now, Mr. White erected this fence. He says he erected the fence where he thought the line was. Now, the law would not permit him to think the line was any other place than where the plat put it, you see, because he bought under the plat. So, therefore, he thought he had the fence on the west plat line of lot 25. Now, he says he doesn't want anybody else's property; he just wants what he is entitled to, and that would be the westward extension of lot 25. Now, his fence is not there. He doesn't claim that little strip of ground essentially by reason of anything else than that he is entitled to it under his deed. All he is entitled to under his deed is lot 25, and lot 25 doesn't come to the place where the

fence is. He has no color of title to this little strip of ground in there. He could not be claiming it openly and notoriously to somebody else, because he misapprehended where the line was. He is just honestly mistaken about it. In that sort of a situation you can't get another's property by adverse possession. * * *

. "It is necessary that I hold that there is no defense in this case to. the claim of the plaintiff. To hold for the defendant in this lawsuit would be to give her 52½ feet, which is 2½ feet more than she had by reason of the fact that Mr. White himself made an honest mistake. Nobody is to blame for making an honest mistake, but you can't get my property by making an honest mistake, don't you see, when I, too, am honest and don't think you are trying to get any more than you are entitled to yourself."

The demurrer to the evidence of the defendant was sustained.

The only proposition presented by this appeal is the contention of the defendant that the boundary line, which defendant claims had been acquiesced in by the plaintiffs and their grantors for more than the statutory period of 15 years, could not be changed by the county surveyor and a new boundary line established.

Where the plaintiffs took title to the property by deed according to the recorded plat, the presumption is the boundary is that fixed and established by the plat, and the burden is upon the defendant to overcome this presumption by positive evidence that the boundary was changed and re-established by some act or agreement of the adjoining owners amounting to a practical location of the boundary, and that the boundary so located and established was acquiesced in by the plaintiffs and their grantors, immediate and remote, for a period of 15 years prior to the filing of said action.

The facts in this case are very similar to the facts in the case of Reynolds et ux. v. Wall, 181 Okla. 110, 72 P.2d 505, in which case the adjoining lot owners jointly constructed a four-car garage and a double driveway upon and across the property line, the intention of the parties being to construct the same so that the center line of the driveway and the party wall separating the respective halves of the garage would coincide with the boundary line between their lots. Some years later an official survey revealed that the center line of the garage and driveway was about two feet off the boundary line according to the recorded plat. In that case this court

held, under the evidence in the case, that the improvements were so located by mutual mistake of the lot owners and that they had no intention of establishing a different boundary than the one fixed by the plat, and that acquiescence in said arrangement did not estop the plaintiff from claiming up to the true boundary line. The court held, however, that the evidence showed that the defendants had used one-half of the garage continuously and uninterruptedly for 15 years and that defendants had established a prescriptive right to the use of the same.

From the evidence in this case we take the view of the trial court that the lot owners had no intention of establishing a different boundary line between their respective properties than ·the division line fixed by the plat; that the location of the fence and the acquiescence in said location was a result of a mistake of the parties as to the location of the true boundary line and that the prescriptive right did not arise by reason thereof. The judgment of the trial court is affirmed.

BAYLESS, C. J., and GIBSON, HURST, and DANNER, JJ., concur.