Paul Thomas GRUNDEN and Iva
Arlene Grunden, Appellees,

v.

Ted HURLEY and Deborah A.
Hurley, Appellants.

No. 65603.

Court of Appeals of Oklahoma,
· Division No. 1.

April 14, 1987.

Thomas R. Williams and Larry G. Hurst,
Guthrie, for appellants.

Bert A. Richard, Jr., Guthrie, for appellees.

GARRETT, Judge:

This case involves a boundary dispute between owners of adjacent tracts of land.

Appellants, Ted Hurley and Deborah A. Hurley, are husband and wife and were Defendants in the court below. Appellees, Paul Thomas Grunden and Iva Arlene Grunden are husband and wife and were Plaintiffs. The parties will be referred to herein as follows: Appellants will be called Hurleys or Defendants, and, in some instances Mr. Hurley's parents and grandparents will be called Hurleys; and, Appellees will be called Grundens or Plaintiffs, and, in some instances Mr. Grunden's parents and grandparents will be called Grundens.

Plaintiffs and Defendants (and their parents and grandparents) have owned (continuously since 1941) and now own adjoining tracts of land. The boundary line between these two tracts extends in an east/west direction, and its location is the controversy. Plaintiffs' land is on the south and Defendants' land is on the north. On the west side of both tracts is a city street or the extension thereof.

In the spring of 1941 the Hurleys purchased their land which made them neighbors of the Grundens. There was a dwelling house facing west on the south side of the Hurley land which was very close to the boundary line. The house had a porch at the rear (southeast corner) with stairsteps extending toward the south from the porch to the ground. The stairsteps protruded into the Grundens' property on the south. The stairsteps and porch are still there, in the same location.

In the summer of 1941 the Hurleys decided to build a fence around the land they had purchased. Mr. Hurley and his sons, Jack Hurley and Joe Hurley, and Mr. Cliff Grunden built the fence. (Jack Hurley is the father of Appellant, Ted Hurley.) When the east/west, boundary line fence was being built, the fence builders were near the southeast corner of the Hurley property and were building and constructing fence in a westerly direction. The testimony at the trial was that Mr. Cliff Grunden told Mr. Hurley: "Now that's going to

crowd your yard" and "We'll move this fence over so you'll have some room in that yard". Then Mr. Grunden went out and dug the corner posts and staked the fence line and helped them lay the fence off and said: "This will be the boundary, because you need it and, it's just an old rock hill". The witness testifying was Jack Hurley who was fourteen years old at the time and was one of the persons who built the fence. He testified: "We built the fence right where Mr. Grunden, Cliff Grunden, helped us build it."

The fence continued to be in the same location from the time it was built in 1941 until 1973 (32 years) when Plaintiffs acquired title to the Grunden property; and continued to be in the same location thereafter until 1975 when Defendants acquired title to the Hurley property; and continued to be located in the same place until this action was commenced (a total of 44 years); and is there now.

The undisputed evidence was that Plaintiffs and their parents and grandparents used and occupied their land continuously after 1941 up to this fence; and, that Defendants and their parents and grandparents used and occupied their land continuously after 1941 up to the fence and treated the land north of the fence as if it were their property until the present time. The Hurleys used it for a yard, garden, clotheslines, swing sets, planted a hedge, children's play area, to widen their driveway, and other usual and customary domestic uses. At least, until 1973 (32 years after the fence was constructed) there was no dispute between these neighbors and no problem with reference to the fence and all parties by their acts and actions treated the same as the boundary between their respective lands.

Plaintiffs presented two witnesses. Plaintiff, Arlene Grunden, testified that the maintenance of the fence at the wrong place was by permission. However, she was not there when the fence was built and her testimony that "we paid the taxes" was tempered by her testimony that she and her husband acquired title and started paying taxes in 1973. Her son, Clarence Allen,

(step-son of Plaintiff Paul Thomas Grunden) testified: "I've known all my life that there's been a dispute over that fence" and "I won't say a dispute, but we knew that the fence was not in its present, in its right position".

Defendants presented four witnesses. Velma Hurley, Defendants' grandmother, was there when the fence was built. She testified that while she did not work on the fence, that she did stand around and watch and listen and she knew what was going on and that the fence was put in as a boundary and that it was claimed as a boundary thereafter. Her son, Jack Hurley, and her son, Joe Hurley, helped build the fence. Jack Hurley testified as hereinabove set forth and Joe Hurley corroborated his testimony.

Defendant, Ted Hurley, testified. He was not there when the fence was build, but he testified as to the use of the property. He testified that in 1973, he was living there before he bought the Hurley house; that Plaintiff, Tom Grunden, called him and offered to sell the disputed tract to him for $300, and he said he didn't need to buy it because he already had it; and that Tom said he would take the fence down. So, Defendant told him that was a boundary fence and "you can't take it down or I'll have you in jail". Nothing further was said or done until 1985.

There was little conflict in the competent testimony as to the material facts. Until shortly before this action was filed, the evidence revealed only one incident relative to this fence and boundary line in the 44 years from 1941 to 1985, and that was in 1973 as aforesaid. Plaintiffs contended the use of the disputed tract was simply a permissive matter. Defendants contend that the fence was constructed as a boundary between the properties and rely on the doctrine of boundary line by aquiescence.

The trial court made the following findings: (1) a gift was not proven by preponderance of evidence, (2) all deeds contained description of original boundary as shown by survey, (3) plaintiffs and predecessors paid the taxes, (4) fence is open ended and does not enclose the land in question and

does not constitute a complete division line, (5) no improvements have been constructed on land in question, (6) the stairway is not an improvement, (7) no declarations concerning ownership of land in question were made until 12 years prior to filing suit, and, (8) clear intention of parties 40 plus years ago proven by preponderance of evidence. The trial court granted an injunction to Plaintiffs and against Defendants which ordered Defendants not to interfere with Plaintiffs in constructing a new fence and denied Defendants' prayer for a decree quieting title.

This is a matter of equitable cognizance. The judgment of the trial court will be affirmed unless it is found to be against the clear weight of the evidence. *Wetsel v. Johnson*, 468 P.2d 479 (Okl.1970). Defendants appeal and contend that the judgment of the trial court is against the clear weight of the evidence. Defendants rely on the doctrine of boundary line by acquiescence and contend that the trial court erred in granting judgment to Plaintiffs and that the trial court should have decreed that the fence line was the boundary line between the separately owned tracts of land and should have quieted Defendants' title to the disputed tract.

In *Lewis v. State*, 187 Okl. 404, 103 P.2d 512 (1940) the Supreme Court of Oklahoma held:

Where adjoining landowners occupy their respective premises up to a certain fence line which they mutually recognize and acquiesce in for a long period of time, usually the time prescribed by the statute of limitations, they are precluded from claiming that the boundary line thus recognized and acquiesced in is not the true one.

In *Lewis*, the Court said that since Plaintiff pitches his claim to the boundary upon acquiescence, he thereby eliminates agreement in the sense of a contract and relies wholly upon the acts of the various actors. The Court pointed out the existence of four factors. (1) The division of a unit of land; (2) the running of a fence between the divided portions of the unit deviating from the true line as established by government

survey; (3) the continued maintenance of the fence for 27 years; and, (4) the use by the respective parties of the land lying on their respective sides of the fence only. Then the Court asked itself this question: "Is this sufficient to establish title by acquiescence?" Then, the Court answered the question as follows: "We think it is."

The facts in the case at bar are very similar to the facts in *Lewis v. Smith, supra*. The same four factors exist here. Appellees point to the fact that Plaintiffs paid the taxes and seemingly contend that this precludes Defendants from claiming boundary line by acquiescence. Payment of taxes is a factor to be considered, but it is not conclusive. *Kouri v. Burnett*, 415 P.2d 963 (Okl.1966). Most, if not all of the findings of the trial court are either immaterial or inconclusive when considering an issue of boundary line by acquiescence. The acts, conduct, and declarations of the parties together with 30 to 40 years recognition of the boundary line, with the fence being continuously in place, are much more material and conclusive in deciding the ultimate issue.

In *Holt v. Hutcheson*, 333 P.2d 530 (Okl. 1958), the Supreme Court of Oklahoma held:

The adoption of a division line between the owners of adjoining lands may be implied from their acts and declarations and by acquiescence in respect thereto, and after the recognition of such division line as the true boundary for the statutory period of limitation, the parties and their privies are estopped from asserting that it is not the true line.

*Also see Rocher v. Williams*, 183 Okl. 221, 80 P.2d 649 (1938); *Glenn v. Yoder*, 339 P.2d 108 (Okl.1959); and, 12 O.S. 1981 § 93.

The trial court erroneously ruled several times that the conversations and declarations of the parties could have no significance. We hold that the actions, conduct, and the declarations of the parties and their acquiescence in the fence line being the boundary line and their use and occupation of their respective lands up to the fence for 44 years results in the parties being estopped to deny that the fence line

constituted the true boundary between the two tracts of land. Thirty-two years of this fourty-four years had passed prior to the time that the Plaintiffs acquired their title to the Grunden land. The 15-year statutory period of limitations had elapsed approximately seventeen years prior to their becoming owners.

It follows that the judgment of the trial court should be and the same is REVERSED. This cause is remanded to the trial court with directions that judgment be rendered for Defendants and against Plaintiffs which shall include quieting Defendants' title to the disputed tract of land and establishing the existing fence line as the boundary line.

REVERSED AND REMANDED.

ROBINSON, P.J., and REYNOLDS, J., concur.